# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 304-14423 |
| PURVI PETROLEUM III, LLC, ) | |
| ) | CHAPTER 11 |
| Debtor, ) | |
| ) | JUDGE MARIAN F. HARRISON |
| ) | |
| NASIR HAKEEM and ) | |
| SAADIA TRADING, INC. ) | ADV. NO. 306-0437A |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| PURVI PETROLEUM III , LLC, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| GARY M. MURPHEY, ) | |
| CHAPTER 11 TRUSTEE, ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| NASIR HAKEEM and ) | |
| SAADIA TRADING, INC. ) | |
| ) | |
| Counter-Defendants. ) | |

___

## MEMORANDUM OPINION
___

This matter came before the Court on August 29, 2007, upon the Plaintiffs' claim for breach of contract against the Debtor and upon the counterclaims of Gary M. Murphey, the Chapter 11 Trustee (hereinafter "Trustee"), for payment of rent and other amounts owed to the Debtor by the Plaintiffs under a lease agreement and certain promissory notes. For the reasons set forth in this Memorandum Opinion and stated at the trial in this matter, representing the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, the Court finds that the Plaintiffs' complaint should be dismissed and that the Trustee's counterclaims should be granted.

## I. BACKGROUND

The parties have stipulated to the following facts. Plaintiff Saadia Trading, Inc. (hereinafter "Saadia") entered into a Lease Agreement of Real Property, dated May 2, 2002, with the Debtor (hereinafter "Lease") for the purposes of operating a gas station/convenience store located at 3090 Wilma Rudolph Boulevard, Clarksville, Tennessee (hereinafter "Clarksville Store"). Plaintiff Nasir Hakeem, a principal of Saadia, guaranteed the Lease, which contained an initial term of five years and required a monthly rental payment in the amount of $5000. The Lease required that rent be paid in advance on the first day of each month.

On May 5, 2002, Saadia and the Debtor executed a Fuel Supply and Commission Agreement (hereinafter "FSA"), pursuant to which Saadia agreed to collect all monies from

the sale of motor fuels at the Clarksville Store and remit the same to the Debtor on a daily basis. Under the FSA, the Debtor was to pay commissions to Saadia based on the sale of fuel. The FSA required that the fuel commissions be paid on the fifteenth day of the month following the month in which such commissions were earned.

On May 5, 2002, Saadia and the Debtor executed an Asset Purchase Agreement (hereinafter "APA"), pursuant to which Saadia agreed to purchase certain personal property and inventory located at the Clarksville Store. In connection with the APA, the Debtor lent $30,000 to Saadia, evidenced by a promissory note (hereinafter "First Note"). This note was guaranteed by Mr. Hakeem. The First Note bore interest at the rate of 10% per annum and matured on May 2, 2003. In addition to the $30,000 loan, the Debtor also lent Saadia $19,938.71, evidenced by a second promissory note (hereinafter "Second Note"). The Second Note matured on May 17, 2002. Saadia failed to pay all sums owing under the Notes.

On February 26, 2003, the Debtor issued a default notice to Saadia requesting that Saadia comply with the Lease and pay all rents and other sums due thereunder. The Plaintiffs only made one rent payment to the Debtor during the entire time the Plaintiffs occupied the Clarksville Store. As a result, the Debtor did not remit the fuel commissions to Saadia.

3 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:06-ap-00437    Doc 26    Filed 12/06/07    Entered 12/06/07 10:17:30    Desc Main
Document      Page 3 of 7

On November 30, 2004 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a voluntary petition for relief under Chapter 11. On May 17, 2005, this Court entered an Order approving the Debtor's retention of Gary M. Murphey as its Restructuring Officer.

In September 2005, Saadia failed to turn over to the Debtor all cash receipts from fuel sales at the Clarksville Store. During this time period, the Middle Tennessee area was experiencing a fuel shortage due to Hurricane Katrina. Based on Saadia's continued failure to pay its monthly rent, the failure to turnover all cash receipts from fuel sales, and the fuel shortage, Mr. Murphey directed the Debtor to discontinue supplying fuel to the Clarksville Store.

Shortly thereafter, the Debtor commenced efforts to market and sell the Clarksville Store and terminated the Lease with Saadia. During the course of the Debtor's efforts to sell the Clarksville Store, Mr. Hakeem admits that he changed the locks at the Clarksville Store, making it difficult for Mr. Murphey to show the Clarksville Store to potential purchasers.

On May 12, 2006, the United States Trustee appointed Gary M. Murphey as the Chapter 11 Trustee. On June 27, 2006, the Court entered an Order approving the sale of the Clarksville Store pursuant to 11 U.S.C. § 363, free and clear of all liens and interests, including all liens or interests claimed by the Plaintiffs pursuant to the Lease or otherwise.

Under the terms of the First and Second Notes, the Plaintiffs owe late fees in the amount of 10%, default interest at the maximum rate permitted by applicable law, and all costs of collection, including attorneys' fees. Under the terms of the Lease, the Plaintiffs owe late fees in the amount of $125 per month, accrued interest on past due rent at the maximum rate permitted by law, and all costs of collection, including attorneys' fees.

## II. DISCUSSION

As an initial matter, the Court finds that the Plaintiffs failed to file a proof of claim and that the deadline for filing claims was October 31, 2006. The Plaintiffs' claims against the Debtor should have been asserted through a proof of claim and not by initiating this adversary proceeding. Moreover, the Plaintiffs could have filed a timely proof of claim as this adversary complaint was filed prior to the claims bar date. The Plaintiffs offered no explanation as to why they should not be bound, as were the other creditors, by the October 31, 2006, deadline for filing claims, and there is no provision for distribution to those who do not file a proof of claim. Thus, any claims the Plaintiffs may have against the Debtor are procedurally barred.

In addition, the parties stipulated to a sequence of events which precludes the Plaintiffs' recovery. The Plaintiffs initially breached the contracts with the Debtor by failing to pay the rent. Rent under the agreement was due on the first day of the month, and fuel

5 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:06-ap-00437    Doc 26    Filed 12/06/07    Entered 12/06/07 10:17:30    Desc Main
Document      Page 5 of 7

commissions were to be paid on the fifteenth of the following month. The Plaintiffs paid rent for the first month of the Lease but did not pay rent for the second month. When the Plaintiffs did not pay rent the second month, the Debtor did not pay the fuel commissions due thereafter. Because the Plaintiffs had already breached the Lease, the Debtor was well within its contractual right not to pay the fuel commissions.

A party who breaches a contract first may not sue the other for a later breach, as one is not obligated to fulfill a contract that has been breached by the other party. *See* ***W.F. Holt Co. v. A & E Elec. Co., Inc.,*** 665 S.W.2d 722, 730 (Tenn. Ct. App. 1983); ***Carter v. Krueger***, 916 S.W.2d 932, 936 (Tenn. Ct. App. 1995) ("party who has materially breached a contract is not entitled to damages stemming from the other party's later material breach of the same contract") (citations omitted). Thus, this "first breach" by the Plaintiffs relieved the Debtor from its duty to remit fuel commissions to the Plaintiffs which did not become due until after the Plaintiffs had failed to pay rent.

The Plaintiffs also argued that the Lease with the Debtor had been modified by oral agreement such that the Plaintiffs were not obligated to pay rent as required by the Lease. However, the Plaintiffs did not present any credible evidence that supported the claimed modification. The testimony provided by the Trustee showed that the Debtor kept a detailed spreadsheet with a running total of rents owed by the Plaintiffs less the fuel commissions withheld by the Debtor. Furthermore, Mr. Hakeem testified that the Debtor continually

demanded payment despite his allegations of an oral agreement that he not have to pay the rent. The actions of the Debtor show a clear, continuous intent to collect the rent. Moreover, the Lease contained an express provision that required any modification to be in writing and signed by both parties. This requirement, as an express term of the Lease, means that the Plaintiffs' reliance on an alleged oral modification must fail as a matter of law. *The Hardison Law Firm, P.C. v. Howell*, No. W2002-01945-COA-R3-CV, 2003 WL 22718427, at *16 (Tenn. App. Nov. 17, 2003) (holding that clause in lease requiring modifications in writing, signed by both parties estopped, defendant from claiming reliance on alleged oral modification as a matter of law).

### III. CONCLUSION

Accordingly, the Court finds that the Plaintiffs' complaint should be dismissed and that the Trustee's counterclaims should be granted.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**